1
2
3
4
5
6
7
8                      UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11  CLYDE TILLERY,                          No.  1:14-cv-02025-KJM-BAM

12              Plaintiff,

13      v.                                   ORDER

14  JOHN D. LOLLIS; CITY OF
    PORTERVILLE; CITY OF
15  PORTERVILLE FIRE DEPARTMENT;
    MARIO GARCIA; GLENN IRISH; DOES
16  1-20,

17              Defendants.

18

19              This matter is before the court on defendants' motion to dismiss plaintiff's first

20  amended complaint.  Defs.' Mot., ECF No. 7.  Also before the court is defendants' request for

21  judicial notice.  Request for Judicial Notice (RJN), ECF No. 8.  Plaintiff opposes the motion.

22  Opp'n, ECF No. 9.  The court held a hearing on this matter on February 27, 2015.  David

23  Duchrow appeared for plaintiff and Erik Cuadros appeared for defendants.  For the following

24  reasons, the court GRANTS defendants' request for judicial notice and DENIES in part and

25  GRANTS in part their motion to dismiss.

26  I.      PROCEDURAL BACKGROUND

27              On May 28, 2014, plaintiff Clyde Tillery filed a complaint for damages for

28  whistleblower retaliation and employment discrimination in Tulare County Superior Court.

1    Notice of Removal (Not. Rem.), ECF No. 1.  The City filed a demurrer to all three claims.  Ex. B,

2    ECF No. 1.  On November 19, 2014, prior to hearing on the demurrer, plaintiff filed a first

3    amended complaint adding claims under 42 U.S.C. § 1983 (deprivation of free speech), 29 U.S.C.

4    § 2615 (interference with FMLA leave) and 29 U.S.C. § 2615 (FMLA retaliation) to the claims he

5    previously had pled under California Labor Code section 1102.5(b) and California Government

6    Code sections 12940(h) (FEHA – retaliation) and 12940(j) (FEHA – hostile work environment).

7    Ex. C, ECF No. 1 (First Am. Compl. or FAC).  Defendants removed the action to this court on

8    December 19, 2014.

9    II.    STANDING ORDER

10           In his opposition, plaintiff points out defendants failed to comply with the court's

11   standing order providing that no brief should exceed twenty pages, and requiring parties meet and

12   confer prior to the filing of any motion.  However, because this case was transferred from the

13   Fresno division of this district, this court's standing order was not issued until after defendants

14   had filed their motion to dismiss.  *See* ECF No. 20-1.  Though the court will not apply its standing

15   orders' briefing and meet and confer requirements to this motion, any subsequent motions must

16   comply with the requirements or risk sanctions.

17   III.   REQUEST FOR JUDICIAL NOTICE

18           Defendants request the court take judicial notice of portions of the City of

19   Porterville's Municipal Code addressing the city's personnel system because they are public

20   records and their contents are not reasonably subject to dispute.  RJN, ECF No. 8 at 3.  As these

21   documents are matters of public record and subject to ready determination of their accuracy, the

22   court GRANTS defendants' unopposed request.  *See* Fed. R. Evid. 201.

23   IV.   ALLEGATIONS OF THE COMPLAINT

24           Plaintiff was employed as a firefighter by defendants City of Porterville Fire

25   Department (CPFD) and City of Porterville (City) from April 1999 until his termination on March

26   4, 2013.  FAC at 1–2.  Defendant Mario Garcia served as CPFD's Head of Fire Prevention when

27   plaintiff returned to work in April 2011.  *Id.* at 4.  He later served as Fire Chief until his

28   retirement in October 2012.  *Id*. at 3.  Defendant Glenn Irish was Garcia's "hand-picked

2

successor," promoted from Battalion Chief to Fire Chief in October 2012.  *Id.*  Defendants Mario

Garcia and Glenn Irish worked in managerial capacities, and had supervisory authority over

plaintiff and authority to enact policies of the CPFD.  *Id.* ¶¶ 7–10.

Plaintiff suffered an on-the-job injury on January 26, 2011, and was placed on

City-approved medical leave for one month in March 2011.  *Id.* ¶¶ 13–14.  When he returned to

work on April 28, 2011, plaintiff noticed he was "treated differently" and received fewer

assignments, was subjected to "rude" behavior, and other employees, including defendants Garcia

and Irish, would ignore him.  *Id.* ¶ 16.  On September 27, 2011, Garcia withdrew his approval of

an adjustment to plaintiff's work schedule, meaning that plaintiff could not then continue his

work teaching at a local high school, as he had done for seven years.  *Id.* ¶ 19. Plaintiff met with

Garcia to discuss his refusal to accommodate plaintiff, but Garcia maintained his refusal.  *Id.*

¶ 22.  Garcia "admitted that he was upset because he had a big problem with [plaintiff's]

workman's compensation injury which he was 'not sure was even work related.'"  *Id.* ¶ 21.

Within two weeks of that meeting, Battalion Chief Lapere, at defendant Garcia's behest, issued

plaintiff a written reprimand stating he had been dishonest about his work schedule.  *Id.* ¶ 23.

On March 7, 2012, plaintiff was working in the office of former Fire Chief Loran

Blasdell.[1]  While cleaning out the file cabinets, he found a printed email with pornographic

material, sent from Blasdell (as "oralguy63") to another male.  *Id.* ¶ 24.  Plaintiff turned the

pornographic email over to Lapere, who took it to Garcia's office.  *Id.*  Lapere told plaintiff

Garcia shredded the email.  *Id.*  Garcia and Blasdell were "best friends."  *Id.* ¶ 25.

Shortly thereafter, Lapere requested plaintiff submit a doctor's note for surgery

plaintiff had scheduled on April 13, 2012.  *Id.* ¶ 26.  Lapere said defendant Garcia "demanded

that Lapere find out why [p]laintiff was having surgery[,]" and "doubted that [p]laintiff's surgery

was job related."  *Id.*

On March 29, 2012, plaintiff was working in an assigned CPFD office, where he

discovered four compact discs underneath a two tier letter file on the desk.  *Id.* ¶ 27.  Unable to

---

[1] In their motion, defendants say Blasdell was not the "Fire Chief," but rather was a "Battalion Chief" until his retirement in October 2011.  ECF No. 7-1 at 2 n.4.

1  open the discs and believing they contained work-related material, plaintiff brought them home to

2  review. *Id.* He reviewed the first disc, which revealed, among other things, "very disturbing

3  images of what appeared to be child pornography," and noticed Blasdell pictured in multiple

4  images. *Id.* Each disc contained more child pornography. *Id.*

5         Plaintiff was ill the next day but two days later told a coworker about the

6  materials, and the coworker informed Garcia. *Id.* ¶ 29. Garcia began to "pressure plaintiff,

7  through coworkers, to turn the materials over" to him. *Id.* Concerned Garcia would destroy the

8  materials, plaintiff and a coworker delivered the materials to the City of Porterville Police

9  Department. *Id.* To avoid a conflict of interest, the City of Porterville Police Department turned

10  the investigation over to U.S. Immigration and Customs Enforcement (ICE), which uncovered a

11  nationwide crime ring including Blasdell, which was responsible for distributing child

12  pornography. *Id.* ¶ 31.

13         Defendant Garcia "was very upset with [p]laintiff" for giving the child

14  pornography materials to the Porterville Police Department, and "increased the frequency and

15  intensity of the retaliation and harassment against [p]laintiff," and "chilled [p]laintiff's

16  willingness to exercise his free speech rights." *Id.* ¶ 33. The harassment and retaliation included

17  but was not limited to: 1) reprimanding plaintiff for insubordination because plaintiff did not give

18  Lapere a doctor's note for pre-scheduled surgery; 2) not including plaintiff in a list of employees

19  covered by a restraining order against Blasdell; 3) removing plaintiff from his former routine

20  duties; 4) prohibiting plaintiff from engaging in outside employment opportunities; and

21  5) prohibiting plaintiff from continuing his flexible schedule. *Id.*

22         In May 2012, plaintiff complained to the City and defendant City Manager Lollis,

23  as Garcia's immediate supervisor, about the hostile work environment and retaliation; no action

24  was taken, and Garcia's behavior persisted. *Id.* ¶¶ 34–35. In October 2012, defendants Garcia

25  and Does 1–5[2] initiated a personnel investigation against plaintiff regarding CPR cards allegedly

26  _____

27  [2] The Ninth Circuit provides that "'[plaintiffs] should be given an opportunity through discovery to identify [] unknown defendants'" "in circumstances . . . 'where the identity of the alleged defendant[] [is] not [] known prior to the filing of a complaint.'" *Wakefield v. Thompson*, 177

28  F.3d 1160, 1163 (9th Cir. 1999) (quoting *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980))

1    issued by plaintiff in violation of American Safety & Health Institute Rules. *Id*. ¶ 36. Plaintiff

2    was placed on paid administrative leave. *Id*. He alleges the investigation was "another action in

3    interference with his medical leave, [] interference with protected speech, and in retaliation for

4    [p]laintiff's prior reporting . . . ." *Id*. ¶ 37. The investigation lasted 106 days, during which

5    plaintiff was prohibited from taking other employment. *Id*. ¶ 39. During this time, plaintiff

6    requested permission to assist with FEMA disaster aid, as he had done in the past, but was denied.

7    *Id*. ¶ 40. Plaintiff believes the investigation was conducted in an effort to discredit his testimony

8    in the criminal matter against Blasdell and to "chill his expression of speech regarding the

9    criminal matter." *Id*. ¶ 46.

10           On October 22, 2012, plaintiff's counsel wrote to defendant Lollis, in an effort to

11   avoid litigation, providing "an extensive statement of facts" including "all named defendants in

12   this case; the injuries and damages [p]laintiff sustained," "a legal analysis," and an invitation to

13   mediation. *Id*. ¶ 53. Plaintiff's counsel and the City's attorney corresponded and the parties

14   engaged in two mediation sessions, which were unsuccessful. *Id*. ¶ 58.

15           On February 12, 2013, defendant Irish issued plaintiff a Notice of Intended

16   Disciplinary Action, which plaintiff believes was approved by defendant Lollis. *Id*. ¶ 44. On

17   March 4, 2013, defendant Irish issued plaintiff a Notice of Determination that he was terminated

18   from his employment, effective that day. *Id*. ¶ 45.

19           On or about May 30, 2013, plaintiff filed a formal charge of discrimination with

20   the California Department of Fair Employment and Housing (DFEH) against all defendants,

21   identifying the actions described in the complaint. *Id*. ¶ 51. He was issued a right-to-sue letter on

22   /////

23   _____

24   (modifications in the original). Plaintiff is warned, however, that such defendants will be
     dismissed where "'it is clear that discovery would not uncover the identities, or that the complaint
     would be dismissed on other grounds.'" *Id*. (quoting *Gillespie*, 629 F.2d at 642). Plaintiff is

25   further warned that Federal Rule of Civil Procedure 4(m), which states that the court must dismiss

26   defendants who have not been served within 120 days after the filing of the complaint unless
     plaintiff shows good cause, is applicable to doe defendants. *See Glass v. Fields*, No. 1:09-cv-

27   00098-OWW-SMS PC, 2011 U.S. Dist. LEXIS 97604 (E.D. Cal. Aug. 31, 2011); *Hard Drive
     Prods. v. Does*, No. C 11-01567 LB, 2011 U.S. Dist. LEXIS 109837, at *2-4 (N.D. Cal. Sep. 27,

28   2011).

1    or about that date.  *Id.* ¶ 52.  Plaintiff has suffered economic and emotional damages, to be

2    determined at a later date.  *Id.* ¶¶ 49–50.

3    V.       LEGAL STANDARD

4           Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to

5    dismiss a complaint for "failure to state a claim upon which relief can be granted."  A court may

6    dismiss "based on the lack of cognizable legal theory or the absence of sufficient facts alleged

7    under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.

8    1990).

9           Although a complaint need contain only "a short and plain statement of the claim

10   showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to survive a motion

11   to dismiss this short and plain statement "must contain sufficient factual matter . . . to 'state a

12   claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting

13   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint must include something

14   more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or "'labels and

15   conclusions' or 'a formulaic recitation of the elements of a cause of action.'"  *Id.* (quoting

16   *Twombly*, 550 U.S. at 555).  Determining whether a complaint will survive a motion to dismiss

17   for failure to state a claim is a "context-specific task that requires the reviewing court to draw on

18   its judicial experience and common sense."  *Id.* at 679.  Ultimately, the inquiry focuses on the

19   interplay between the factual allegations of the complaint and the dispositive issues of law in the

20   action.  *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

21          In making this context-specific evaluation, this court must construe the complaint

22   in the light most favorable to the plaintiff and accept as true the factual allegations of the

23   complaint.  *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007).  This rule does not apply to "'a legal

24   conclusion couched as a factual allegation,'"  *Twombly*, 550 U.S. at 555 (quoting *Papasan v.

25   Allain*, 478 U.S. 265, 286 (1986)), nor to "allegations that contradict matters properly subject to

26   judicial notice" or to material attached to or incorporated by reference into the complaint.

27   *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988–89 (9th Cir. 2001).

28   /////

                                                    6

1    VI.    DISCUSSION

2          A.    First Claim (Violation of California Labor Code Section 1102.5 (Retaliation))

3                a.    Administrative Exhaustion

4          Defendants argue plaintiff's first claim should be dismissed because plaintiff did

5    not comply with the requirements of the California Tort Claims Act (CTCA), which requires

6    presentation of a tort claim to a local public entity before a plaintiff files a civil action.  Defs.'

7    Mot. at 5 (citing Cal. Gov't Code §§ 910, 915).  Because the CTCA requires a plaintiff to file a

8    claim six months from the time a cause of action accrued, defendants say the claim is now time-

9    barred because plaintiff was terminated on March 4, 2013.  Id. at 7.  Plaintiff argues he is not

10   required to exhaust his claims after the recent enactment of Labor Code section 244.  Opp'n at 4.

11   In the alternative, he argues that even if the CTCA applies, he substantially complied by sending

12   letters to City Manager Lollis and the City's attorney, dated October 22, 2012 and December 12,

13   2012, respectively.  Opp'n at 5; FAC Exs. 3 & 5.  Because the court finds plaintiff substantially

14   complied with the CTCA, as explained below, it does not reach plaintiff's argument based on

15   section 244.

16          The CTCA requires that "all claims for money or damages against local public

17   entities" or public employees acting within the scope of that employee's public employment must

18   first be presented to the employer.  Cal. Gov't Code §§ 905, 950.2.  "[N]o suit for money or

19   damages may be brought against a public entity on a cause of action for which a claim is required

20   to be presented . . . until a written claim therefor has been presented to the public entity and has

21   been acted upon . . . or has been deemed to have been rejected."  Cal. Gov't Code § 945.4.  The

22   claim must include general information such as the date, place, and time of the incident and any

23   involved public employees so that the government entity may adequately investigate.  Id. § 910.

24   The claim must also be presented to a designated receiver, such as the clerk, secretary, or auditor

25   of the defendant entity.  Id. § 915.

26          Plaintiff argues his October and December 2012 letters (collectively, the Letters)

27   substantially comply with the statute.   The October 22 letter, written by plaintiff's counsel David

28   Duchrow on behalf of plaintiff, is addressed to defendant Lollis, Porterville's City Manager.

7

1    FAC, Ex. 2.  The letter informs Lollis that plaintiff "has consulted with us regarding his rights

2    with his employment at [CPFD].  *Id*. at 1.  The purpose of the letter "is not to begin a process

3    leading toward litigation" but "to offer a mutually agreeable resolution of any claims."  *Id*.  The

4    letter, in nine pages, tracks closely the operative complaint in this action.  It details plaintiff's

5    employment, his work-related injury, medical leave, the alleged difference in treatment he

6    experienced upon returning from leave, the harassing behavior of his supervisors, including

7    Lapere, Garcia and Irish, his March 7, 2012 and March 29, 2012 discovery of pornographic

8    materials in Blasdell's former office, his bringing that discovery to Lapere's attention, Chief

9    Garcia's shredding the evidence and the lack of investigation.  *See generally id*.  It details, with

10   specific dates and names of those involved, defendants' alleged retaliatory actions, including

11   denying changes to his work schedule, making demeaning comments, and stripping him of duties

12   without justification.  *Id*.  It states that after plaintiff reported the pornographic materials to the

13   police, the alleged harassing behavior by his supervisors was "ramped up."  *Id*.  After providing

14   extensive factual details, the letter goes on to analyze the legality of such behavior.  It states

15   "[t]his is a classic disparate treatment, harassment, disability and retaliation case."  In addition to

16   the FEHA, the Letters invoke Labor Code § 132(a), which protects against retaliation for those

17   pursuing workers' compensation claims.  *Id*.  The letter also states a claim for "retaliation for

18   reporting an illegal act," though section 1102.5 is not explicitly mentioned.  *Id*.  The letter also

19   outlines the available remedies for the alleged violations, including back pay, compensatory

20   damages, attorneys' fees, and punitive damages.  *Id*.  The letter concludes with an invitation to

21   mediation.  *Id*.

22          A second letter, dated October 30, 2012, supplements the first.  It states that

23   plaintiff's recent administrative leave, and "the timing of this action…does not go unnoticed."  It

24   concludes with another invitation to mediation, and informs the City plaintiff will wait five days

25   for a response before pursuing other channels.  FAC, Ex. 3.  Finally, a letter dated December 12,

26   2012, from plaintiff's counsel to Lollis, states that plaintiff has acquired additional evidence of

27   retaliation.  FAC, Ex. 5.

28   */////*

1    Defendants argue plaintiff's Letters do not comply with the statute because it

2    predates his March 4, 2013 termination, "the primary basis for his retaliation claim." Defs.' Mot.

3    at 8.  They do not otherwise argue that plaintiff's Letters were untimely, or were misdirected or

4    not actually received by the proper entity; therefore, the doctrine of substantial compliance may

5    apply.  *See Garber v. City of Clovis*, 698 F. Supp. 2d 1204, 1216 (E.D. Cal. 2010).

6    Under the substantial compliance doctrine, the CTCA should not be applied "to

7    snare the unwary where its purpose has been satisfied."  *Cory v. City of Huntington Beach*, 43

8    Cal. App. 3d 131, 136.  Substantial compliance is available if the claim as presented satisfies the

9    purpose of the act without prejudice to the government entity receiving the claim.  *Elias v. San*

10   *Bernardino Cnty. Flood Control Dist.*, 68 Cal. App. 3d 70, 74 (Ct. App. 1977).  Where a claimant

11   has attempted to comply with the claim requirements, the doctrine of substantial compliance may

12   validate the claim "if it substantially complies with all of the statutory requirements . . . even

13   though it is technically deficient in one or more particulars." *Santee v. Santa Clara County Office*

14   *of Education* 220 Cal. App. 3d 702, 713 (1990).  Fundamentally, the test for substantial

15   compliance is whether the face of the filed claim discloses sufficient information to enable the

16   public entity to make an adequate investigation of the claim's merits and settle it without the

17   expense of litigation. *Id*.

18   Among other things, Government Code section 910 requires a claimant to state the

19   "date, place, and other circumstances of the occurrence or transaction which gave rise to the claim

20   asserted" and to provide a "general description of the . . . injury, damage or loss incurred so far as

21   it may be known at the time of presentation." Cal. Gov't Code § 910.  "When a public entity

22   receives a document which contains the information required by § 910 and is signed by the

23   claimant or her agent as required by § 910.2, the public entity has been presented with a claim

24   . . . ." *Phillips v. Desert Hosp. Dist.*, 49 Cal.3d 699, 707 (1989).  Here, defendants argue that the

25   defendant's conduct in terminating plaintiff, as pleaded in the first amended complaint, post-dates

26   plaintiff's Letters, and therefore plaintiff's claim cannot satisfy the CTCA.

27   /////

28   /////

The California Supreme Court, when considering to what extent factual allegations must be present in a claim, has held,

> The claim, however, need not specify each particular act or omission later proven to have caused the injury. A complaint's fuller exposition of the factual basis beyond that given in the claim is not fatal, so long as the complaint is not based on an "entirely different set of facts." Only where there has been a "complete shift of allegations, usually involving an effort to premise civil liability on acts or omissions committed at different times or by different persons than those described in the claim" have courts generally found the complaint barred. Where the complaint merely elaborates or adds further detail to a claim, but is predicated on the same fundamental actions or failures to act by the defendants, courts have generally found the claim fairly reflects the facts pled in the complaint.

*Stockett v. Ass'n of California Water Agencies Joint Powers Ins. Auth.*, 34 Cal. 4th 441, 448 (2004). A court looks to whether the claims are based on "the same factual foundation." *Id.* In comparing claim and complaint, "'[s]o long as the policies of the claims statutes are effectuated, [the statutes] should be given a liberal construction to permit full adjudication on the merits.'" *Smith v. Cnty. of Los Angeles,* 214 Cal. App. 3d 266, 280 (Ct. App. 1989) (quoting *Minsky v. City of Los Angeles,* 11 Cal. 3d 113, 123, 113 (1974)). If the claim gives adequate information for the public entity to investigate, additional detail and elaboration in the complaint is permitted. *Id.* "[I]n considering whether a claim substantially complies with the Government Tort Claims Act, the claim should be viewed in its entirety and a determination made as to whether the claim is susceptible to an interpretation that reasonably enables the public entity to make an adequate investigation and settle the claim." *Connelly v. Cnty. of Fresno*, 146 Cal. App. 4th 29, 40 (2006).

In the case of *Jadwin v. Cnty. of Kern*, 2009 WL 926844 (E.D. Cal. Apr. 3, 2009), plaintiff submitted a tort claim asserting retaliation for "raising concerns" "which critically jeopardized patient health care at [defendant] KMC." He claimed that he was retaliated against by demotion and stripping of his duties. *Id.* at *3. As here, Jadwin alleged violations of section 1102.5 in his eventual civil complaint. *Id.* He alleged reporting illegal, non-compliant, and unsafe conduct and that he was unlawfully retaliated against because he engaged in such activity protected by the statute. *Id.* at *5. Defendant argued that because the Labor Code violation was not set forth in the tort claim, and because plaintiff supported it with extensive post-claim

conduct, it was not properly presented and should be dismissed. *Id*. The court agreed with defendant, considering the extensive post-claim conduct, comprising eleven post-claim incidents pleaded in the complaint; the post-claim incidents included placing plaintiff on administrative leave and plaintiff's formal reporting of the conduct to several authorities. *Id*. at *17. The court found that plaintiff's claims were largely based on "alleged retaliatory acts and whistleblowing that post-date Plaintiff's Claim," and did not "give rise to [his] original claim." *Id*. at *15, 17. The court dismissed the claim only to the extent it was premised on post-claim incidents. *Id*. at *19.

In *Jadwin*, unlike here, the court faced post-claim allegations that were paramount to plaintiff's whistleblower retaliation claims, including the allegations of when "he finally blew the whistle," his reduction in compensation and placement on administrative leave. *Id*. at *14. The purpose of the CTCA, to give the government sufficient notice of the factual allegations underlying the claims, was not fulfilled. Here, in contrast, the vast majority of facts supporting the basis of plaintiff's whistleblower retaliation claims were included in his Letters. The only facts supporting the retaliation claim that are missing from plaintiff's Letters are a February 12, 2013 Notice of Intended Disciplinary Action, FAC ¶ 44, and plaintiff's March 4, 2013 termination, *id*. ¶ 45. The Letters did detail with particularity plaintiff's discovery of the unlawful material, his reporting of that activity, the City's lack of investigation and several alleged retaliatory, acts including alleged stripping of plaintiff's duties, his demotion, the revocation of scheduling and other privileges he previously had enjoyed, and plaintiff's administrative leave. That plaintiff submitted his Letters before his termination does not bar his retaliation action. His eventual termination is additional evidence of retaliatory behavior, not the sole basis of his retaliation claim.

"A complaint's fuller exposition of the factual basis beyond that given in the claim is not fatal, so long as the complaint is not based on an entirely different set of facts." *Stockett*, 34 Cal. 4th at 447; *cf. Fall River Joint Unified Sch. Dist. v. Superior Court*, 206 Cal. App. 3d 431, 435 (Ct. App. 1988) (dismissing claim premised "on an entirely different factual basis than what was set forth in the tort claim"). The additional allegations here do not plead an "entirely

different" set of facts, nor do they present a different cause of action, shift liability, or allow for recovery not already noticed in the letter. The City had numerous factual allegations it could investigate, it knew of the potential for litigation, and of course had full control and advance knowledge of the additional fact of plaintiff's termination. Plaintiff offered mediation from the beginning, and the parties attempted settlement without success. Under these circumstances, the purposes of the statute are satisfied and there can be no argument the government is prejudiced by plaintiff's claim proceeding under section 1102.5. The motion to dismiss this claim is denied.

> b.   Claims Based on Individual Capacity

Defendants argue plaintiff's claims against Garcia and Irish in their individual capacities should be dismissed. Defs.' Mot. at 2. Plaintiff responds defendants ignore the clear, plain language of section 1102.5, which imposes individual liability. Opp'n at 5. Each of the first four paragraphs of that section impose liability upon "[a]n employer, or any person acting on behalf of the employer." Cal. Lab. Code § 1102.5(a)-(d). As alleged in the First Amended Complaint, Irish and Garcia were acting "on behalf of" the CPFD. Irish was responsible for assigning work to plaintiff, approving his requests for outside employment, and for disciplining plaintiff. FAC ¶¶ 9, 10, 15, 16, 17, 23, 40, 41, 45. Garcia was a managerial employee with the power to set work schedules, assign work, impose discipline, and other employer functions. *Id.* ¶¶ 7, 8, 9, 15, 16, 33–36.

Courts consistently have held that section 1102.5 precludes individual liability. *See Vierria v. California Highway Patrol*, 644 F. Supp. 2d 1219, 1244 (E.D. Cal. 2009) ("The relevant portions of the statute clearly indicate that [1102.5] is meant to establish prohibited activity by employers, rather than individuals."). However, the statute was recently revised, effective January 1, 2014, to state "[a]n employer *or any person acting on behalf of the employer* . . . ." Cal. Lab. Code § 1102.5 (emphasis added). In deciding an amendment's application, a court "must explore whether the amendment changed or merely clarified existing law." *Carter v. California Dep't of Veterans Affairs*, 38 Cal. 4th 914, 922 (2006). "While an intention to change the law is usually inferred from a material change in the language of the statute, a consideration of the surrounding circumstances may indicate, on the other hand, that the amendment was

1    merely the result of a legislative attempt to clarify the true meaning of the statute." *Dep't of*

2    *Corr. & Rehab. v. Workers' Comp. Appeals Bd.*, 166 Cal. App. 4th 911, 917-18 (2008) (internal

3    quotations and citations omitted).

4            Three California district courts have considered whether individual liability

5    attaches since the revision of the statute, and two of those courts dismissed the individual claims

6    without leave to amend.  *See Vera v. Con-way Freight, Inc.*, No. CV 15-874 AJW, 2015 WL

7    1546178, at *1 (C.D. Cal. Apr. 6, 2015); *Conner v. Aviation Serv. of Chevron U.S.A.*, 2014 WL

8    5768727, *5 (N.D. Cal. Nov. 5, 2014).  The *Vera* court, in a one-paragraph opinion, stated "[t]he

9    statutory text, structure, and legislative history all indicate that only employers—not individual

10   employees—are liable for violations of the statute" without any citation other than to *Conner*.

11   *Vera*, 2015 WL 1546178, at *1.  The *Conner* court's reason for dismissing the claim was that

12   "[p]laintiffs have failed to point to any authority that establishes that individual liability exists for

13   violations of Section 1102.5 despite this statutory language [in section 1104, which provides that

14   an employer is responsible for the acts of his managers, officers, agents and employees]."

15   *Conner*, 2014 WL 5768727, at *5.  In other words, these courts did not address the impact of the

16   amendment.  The third district court "decline[d] to conclude at this juncture that there can be no

17   individual liability for violations of § 1102.5," and noted that "no California state court has

18   spoken on this precise issue."  *De La Torre v. Progress Rail Servs. Corp.*, No. CV154526 FMO

19   GJSX, 2015 WL 4607730, at *4 (C.D. Cal. July 31, 2015).  It found only that "the statute [is]

20   ambiguous on the issue of individual liability" before remanding the case to state court.  *Id.*

21            "When interpreting state law, federal courts are bound by decisions of the state's

22   highest court."  *Strother v. S. Cal. Permanente Med. Group*, 79 F.3d 859, 865 (9th Cir. 1996)

23   (quotation omitted).  If state courts have not addressed the particular issue before it, a federal

24   court must use its best judgment to predict how the highest state court would resolve the issue,

25   "using intermediate appellate court decisions, decisions from other jurisdictions, statutes,

26   treatises, and restatements as guidance."  *Id.*  The California Supreme Court has interpreted

27   statutory language similar to the new language in section 1102.5 to preclude individual liability.

28   In *Reno v. Baird*, 18 Cal. 4th 640, 645 (1998), it affirmed a finding of no individual liability under

13

the FEHA to the extent the statute defines "employer" to include "any person acting as an agent

of an employer…."  In *Reno,* the state Court was particularly persuaded by the distinction

between harassment and discrimination.  Because "actions such as hiring and firing, job or project

assignments, office or work station assignments, promotion or demotion, performance

evaluations, the provision of support, the assignment or nonassignment of supervisory functions,

deciding who will and who will not attend meetings, deciding who will be laid off," are

"necessary personnel management actions," to allow for individual liability would put every

supervisory employee "at risk of personal liability whenever he or she makes a personnel decision

which could later be considered discriminatory." *Id*. at 646-47.  In contrast, "[n]o supervisory

employee needs to use slurs or derogatory drawings, to physically interfere with freedom of

movement, to engage in unwanted sexual advances, etc. in order to carry out the legitimate

objectives of personnel management.  Every supervisory employee can insulate himself or herself

from claims of harassment by refraining from such conduct." *Id*. at 646.  *See also Haligowski v.*

*Superior Court*, 200 Cal. App. 4th 983, 990 (2011) ("Although on their face, these FEHA

provisions [Gov't Code sections 12926(d), 12940(a), 12940(h)] could be read to hold individual

supervisors personally liable, two Supreme Court cases and one appellate court case have

established that individual supervisors and agents of employers cannot be held personally

responsible under these FEHA statutes.").

　　　　In *Jones v. Lodge at Torrey Pines P'ship*, 42 Cal. 4th 1158 (2008), the state Court

analyzed Government Code section 12940(h), which forbids retaliation by making it unlawful for

"any employer . . .  or person to discharge, expel, or otherwise discriminate against any person

because the person has opposed any practices forbidden under this part. . . ."  The Court rejected

the argument that the use of the word "person" in this statute "compels the conclusion that all

persons who engage in prohibited retaliation are personally liable, not just the employer." *Id*. at

1162.  In doing so, it noted the Legislature has adopted other ways to signal individual liability,

such as the "clear language" in Government Code section 12940 (j)(3) "imposing personal

liability on all employees for their own harassing actions." *Id.*  That clear language reads: "An

/////

1   employee of an entity . . . is personally liable for any harassment prohibited by this section that is

2   perpetrated by the employee. . . .” *Id.*

3          Here, the retaliatory conduct plaintiff alleges includes the kind of personnel

4   decisions such as work assignments, whether to grant administrative leave, setting of work

5   schedules and termination that only an employer or its agent can make, as in *Reno*.  The language

6   of the statute on which plaintiff relies does not include clear language imposing individual

7   liability, but rather uses the kind of language consistently associated with imposition of liability

8   on an employer alone, as the statute did in *Jones*.

9          The legislative history of the recent amendment does not suggest otherwise, but

10  rather emphasizes that the amendment applies to an employee “acting on behalf of the employer.”

11  S.B. 666, 2013 Cal. Legis. Serv. Ch. 577 (2013) (“This bill would additionally prohibit any

12  person acting on behalf of the employer from making, adopting, or enforcing any rule, regulation,

13  or policy preventing an employee from disclosing information to a government or law

14  enforcement agency, as provided, and would extend those prohibitions to preventing an employee

15  from, or retaliating against an employee for, providing information to, or testifying before, any

16  public body conducting an investigation, hearing, or inquiry.”).  *See also* Assembly Comm. On

17  Labor and Empl., Bill Analysis, S.B. 666 (June 26, 2013) (stating only that bill “[p]rohibits an

18  employer or any person acting on behalf of the employer from preventing, or retaliating against,

19  an employee for providing information to [or testifying before] any public body conducting an

20  investigation, hearing, or inquiry.”).

21          Absent any authority or legislative intent to the contrary, and consistent with the

22  California Supreme Court’s decisionmaking in this area, this court finds individuals are not

23  susceptible to liability under section 1102.5.  It dismisses plaintiff’s claims against Garcia and

24  Irish in their individual capacities, without leave to amend.

25          c.    Blasdell’s Employment Status

26          Defendants also argue that because Blasdell is not alleged to have been an

27  employee at the time of plaintiff’s reporting of the pornographic materials, plaintiff does not state

28  a prima facie case under section 1102.5.  Defs.’ Mot. at 9-10 (citing Cal. Lab. Code § 1102.5(b)).

1    Plaintiff disagrees, arguing (1) the First Amended Complaint does not plead that Blasdell was not

2    an employee, and by inference Blasdell was an employee when he left pornography in his former

3    office; and (2) section 1102.5 extends beyond misconduct by an employee, to conduct by third

4    parties, "which Blasdell may have been, a fact not alleged in the FAC and thus not appropriate for

5    consideration in a motion under FRCP 12(b)(6) such as the current motion."  Opp'n at 10–11.

6           Section 1102.5 protects employees who report information that discloses "a

7    violation of state or federal statute, or a violation of or noncompliance with a local, state, or

8    federal rule or regulation . . . ."  Cal. Lab. Code § 1102.5.  At this stage, the court must draw all

9    inferences in favor of the nonmoving party at this stage.  Plaintiff alleges the pornographic

10   materials were found in Blasdell's former office at CPFD, and the materials were tied to Blasdell

11   by an e-mail address and his image appearing on the CDs.  These facts, combined with the fact

12   that Blasdell had been an employee of CPFD and can be inferred to have had the materials at

13   work during his employment, support the allegation that Blasdell was an employee at the time

14   relevant to his alleged illegal activity for purposes of pleading a claim under section 1102.5.  The

15   motion to dismiss the first claim is denied.

16       B.      Second Claim: Hostile Work Environment, Gov't Code Section 12940(j) (FEHA)

17               a.      Harassment Based on Sex

18           Defendants argue plaintiff's claims of "sexual harassment" must be dismissed, as

19   they do not state a prima facie claim.  Defs.' Mot. at 10–11.  Plaintiff clarifies that the claim is

20   one of a hostile work environment based on sex, not sexual harassment of plaintiff.  Opp'n at 11–

21   12.  Plaintiff contends a claim of hostile work environment need not be based on "plaintiff's sex,"

22   but it need only be "based on sex."  *Id*. at 11.

23           Government Code § 12940(j)(4)(C) provides that it is unlawful

24               For an employer, . . . or any other person, because of . . . sex,
                 [among other bases,] to harass an employee . . . .  An entity shall
25               take all reasonable steps to prevent harassment from occurring.
                 Loss of tangible job benefits shall not be necessary in order to
26               establish harassment.

27   Cal. Gov't Code § 12940(j)(4)(C).  Plaintiff alleges a hostile environment was created in part by

28   the location of the offensive pornographic materials in Blasdell's former office, and the

16

harassment he experienced, which "although [not itself] sexual in nature, [was] 'based on sex,' in that plaintiff had revealed the sexual/pornographic materials and the hostility arose therefrom." Opp'n at 22.

Plaintiff has not pled the pornographic images were visible in the work environment, but were in an office at one point assigned to Blasdell, under a stack of folders. Moreover, the only alleged harassment was motivated by plaintiff's disclosure of the explosive information about Blasdell; that information happened to be sexual in nature. The alleged harassment itself, however, was not "because of" sex, as the statute requires. The California Supreme Court has identified the contours of a hostile work environment, the type of environment plaintiff here alleges, as requiring a plaintiff be "subjected to sexual advances, conduct, or comments that were severe enough or sufficiently pervasive to alter the conditions of her employment and create a hostile or abusive work environment." *Lyle v. Warner Bros. Television Prods.*, 38 Cal. 4th 264, 278 (2006). In defining harassing behavior, the California Supreme Court cautioned,

> workplace harassment, even harassment between men and women, is [not] automatically discrimination because of sex merely because the words used have sexual content or connotations. Rather, [t]he critical issue . . . is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed. This means a plaintiff in a sexual harassment suit must show the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted discrimina[tion ] . . . because of . . . sex.

*Id.* at 279–80 (internal citations and quotations omitted, alterations in original). Here, plaintiff does not allege any sexual advances, conduct, or comments directed toward him. The court grants defendants' motion to dismiss this claim to the extent the harassment is "based on sex." Because nothing before the court supports concluding that plaintiff could plead a claim that he was harassed "because of sex," the dismissal of this claim is without leave to amend.

C.     Third Claim: Retaliation, Gov't Code Section 12940(h) (FEHA)

Defendants argue plaintiff does not plead sufficient facts showing he engaged in a protected activity under FEHA or to establish a plausible "causal link existed between [any] protected activity and the employer's action." Defs.' Mot. at 14. Plaintiff responds he has

1   adequately pleaded he opposed practices forbidden under the FEHA because he opposed the

2   existence and possession of offensive materials in the workplace, which is a FEHA violation.

3   Opp'n at 19 (pointing to title 2 Cal. Code Regs. § 11019(b)(C) (harassment may constitute "visual

4   forms of harassment, e.g., derogatory posters, cartoons, or drawings on a basis enumerated in the

5   [FEHA]").  Plaintiff opposed the forbidden practices by taking steps to report the child

6   pornography he found in the workplace by delivering it to the police.  Construing the facts as pled

7   in the light most favorable to the plaintiff, plaintiff's reporting of the pornographic materials is

8   activity protected by FEHA because the behavior reported may have contributed to the creation of

9   an hostile work environment.

10          Plaintiff also adequately pleads causal connection; he says it is because he reported

11   the first pornographic email to Garcia that he began to suffer adverse consequences. FAC

12   ¶¶ 32–35.  The motion to dismiss this claim is denied.

13          D.      Fourth Claim (42 U.S.C. § 1983)

14          Plaintiff's fourth claim, based on 42 U.S.C. § 1983, asserts a violation of his free

15   speech rights under the First Amendment, and in particular his "right to speak as a citizen

16   regarding matters of public concern without fear of retaliation or reprisal in his employment."

17   FAC ¶ 75.

18                  a.      Statute of Limitations

19          Defendants argue that all claims relying on events predating November 19, 2012,

20   two years prior to plaintiff's filing of the first amended complaint are time-barred.  Defs.' Mot.

21   14–15.  In section 1983 cases, federal courts adopt the length of the limitations period provided

22   for in the forum state's personal injury law.  *Wallace v. Kato*, 549 U.S. 384, 387 (2007).  In

23   California, section 335.1 of the Code of Civil Procedure governs personal injury claims and

24   therefore imposes a two-year limitations period for this action.  *Canatella v. Van De Kamp*, 486

25   F.3d 1128, 1132 (9th Cir. 2007).

26          Plaintiff filed his original complaint on May 28, 2014, and his first amended

27   complaint on November 19, 2014.  Not. Rem. 1–2, ECF No. 1.  His original complaint did not

28   allege violations of section 1983, but his amended complaint did.  *Compare id.* Ex. A, at 14–17

18

*with id.* Ex. C, at 63–64.  An amendment "relates back to the date of the original pleading when

. . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or

occurrence set out—or attempted to be set out—in the original pleading."  Fed. R. Civ. P.

15(c)(1).  The relation-back rule is "liberally applied."  *ASARCO, LLC v. Union Pac. R. Co.*, 765

F.3d 999, 1004 (9th Cir. 2014) (citation and internal quotation marks omitted).  "An amended

claim arises out of the same conduct, transaction, or occurrence if it 'will likely be proved by the

same kind of evidence offered in support of the original pleading.'"  *Id.* (quoting *Percy v. S.F.*

*Gen. Hosp.*, 841 F.2d 975, 978 (9th Cir. 1988)).  In other words, the old and new pleadings must

share a "'common core of operative facts'" so the defendant "'has fair notice of the transaction,

occurrence, or conduct called into question.'"  *Id.* (quoting *Martell v. Trilogy Ltd.*, 872 F.2d 322,

325 (9th Cir. 1989)).  New allegations may even relate back if the original complaint expressly

disclaimed them, as long as the new claims share a common core of operative facts and the

plaintiff acted in "good faith."  *Id.* at 1006.  Otherwise plaintiffs would be "discouraged from

limiting their initial pleadings to claims and defenses that have evidentiary support"; a litigant

should not "fear that doing so will foreclose them from amending their pleadings if new facts

come to light after further investigation and discovery."  *Id.*

       Here, plaintiff builds his section 1983 claims on essentially the same foundation as

laid in his original complaint: his injury, return to work, later mistreatment, discovery of

pornographic material, reports to the police, and retaliation.  The original allegations provided

adequate notice to defendants.  In light of Rule 15's liberal policy on amendment, plaintiff's

section 1983 claim relates back to the original complaint.  Because plaintiff filed his original

complaint on May 28, 2014, the two-year limitations period covers all allegations that occurred

after May 28, 2012, including for the section 1983 claims of his amended complaint.

       The Ninth Circuit has also held "the doctrine of 'continuing violations'" may

apply in a section 1983 case.  *Gutowsky v. Cnty. of Placer*, 108 F.3d 256, 260 (9th Cir. 1997); *see*

*also Graff v. City of Tehachapi*, 2014 WL 931823, at *4 (E.D. Cal. Mar. 10, 2014) (finding

doctrine can apply in an alleged First Amendment retaliation case); *Berg v. California Horse*

*Racing Bd.*, 419 F. Supp. 2d 1219, 1226 (E.D. Cal. 2006) (same).  The doctrine applies if the

1  plaintiff shows "the maintenance of a discriminatory system both before and during [the

2  limitations] period," *Gutowsky*, 108 F.3d at 259 (citation and internal quotation marks omitted), in

3  other words, "a systematic policy or practice of discrimination that operated, in part, within the

4  limitations period—a systematic violation," *Nat. R.R. Passenger Corp. v. Morgan*, 536 U.S. 101,

5  114, 115 n.9 (2002) (citation and internal quotation marks omitted).  But "discrete discriminatory

6  acts are not actionable if time barred, even when they are related to acts alleged in timely filed

7  charges."  *Id.* at 113.  Discrete acts include, for example, "termination, failure to promote, denial

8  of transfer, or refusal to hire."  *Id.* at 114.

9          Here, plaintiff alleges he discovered the child pornography e-mails on March 29,

10  2012.  FAC ¶ 27.  On March 31, 2012, he turned these materials over to the police.  *Id.* ¶ 28.  In

11  retaliation, defendants allegedly:

12      • Excluded plaintiff's name from a restraining order against Blasdell, *id.* ¶ 33.b;

13      • On May 1, 2012, ordered plaintiff not to conduct several routine duties, *id.* ¶ 33.c;

14      • Prohibited plaintiff from continuing to teach at a local high school and providing

15          services to the Federal Emergency Management Authority (FEMA), *id.* ¶ 33.d;

16      • Prohibited plaintiff from having a flexible schedule, *id.* ¶ 33.a & e;

17      • In May 2012, did not respond to his complaints of a hostile work environment, *id.*

18          ¶ 34;

19      • In May 2012, continued to harass plaintiff by subjecting him to other unspecified

20          adverse employment actions, *id.* ¶ 35;

21      • In October 2012, initiated a pretextual personnel investigation, put plaintiff on

22          administrative leave, and prohibited him from seeking other employment, *id.* ¶¶ 36–

23          38;

24      • Delayed the personnel investigation by conducting it over 106 days, *id.* ¶ 39;

25      • Again prohibited him from volunteering at the high school and for FEMA while on

26          administrative leave, *id.* ¶¶ 40–41;

27      • On February 12, 2013, gave notice of an intended disciplinary action, *id.* ¶ 44; and

28      • On March 4, 2013, issued a notice he would be terminated on that date, *id.* ¶ 45.

1           Several of these actions allegedly occurred on dates after May 28, 2012, while

2   several did not.  And some of these actions may not in fact have been in retaliation for his

3   decision to report the child pornography.  Nevertheless, whether they were part of a continuous

4   system or policy requires the kind of factual inquiry inappropriate for resolution on a motion to

5   dismiss.  *See Lewis v. City of Fresno*, No. 08-1062, 2009 WL 2905738, at *7 (E.D. Cal. Sept. 4,

6   2009) (concluding, in a section 1983 case, that factual inquiries made the question of a continuing

7   violation inappropriate for resolution on a motion to dismiss).  Taking the operative complaint at

8   face value as required, plaintiff's allegations satisfy the continuing violations doctrine to the

9   extent needed to make his § 1983 claim timely.

10                   b.    Municipal Liability

11           Defendants argue plaintiff does not plead sufficient facts necessary to infer

12   municipal liability under section 1983 on the part of the City of Porterville.  ECF No. 7-1 at 15–

13   18.  Plaintiff counters the allegations are sufficient to show a policy or custom of unconstitutional

14   conduct on the part of the City and its Fire Department.  ECF No. 22 at 22–23.

15           Municipalities may be held liable as "persons" under section 1983, but not for the

16   unconstitutional acts of their employees based solely on a respondeat superior theory.  *Monell v.*

17   *Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978).  Rather, a plaintiff seeking to

18   impose liability on a municipality under section 1983 is required "to identify a municipal 'policy'

19   or 'custom' that caused the plaintiff's injury."  *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403

20   (1997) (citing *Monell*, 436 U.S. at 694; *Pembaur v. Cincinnati*, 475 U.S. 469, 480–81 (1986);

21   *City of Canton v. Harris*, 489 U.S. 378, 389 (1989)).

22           To sufficiently plead a *Monell* claim and withstand a Rule 12(b)(6) motion to

23   dismiss, allegations in a complaint "may not simply recite the elements of a cause of action, but

24   must contain sufficient allegations of underlying facts to give fair notice and to enable the

25   opposing party to defend itself effectively."  *AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d

26   631, 637 (9th Cir. 2012) (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)).  A *Monell*

27   claim may be based on any one of three theories of municipal liability: (1) when official policies

28   or established customs inflict a constitutional injury; (2) when omissions or failures to act amount

1     to a local government policy of deliberate indifference to constitutional rights; or (3) when a local

2     government official with final policy-making authority ratifies a subordinate's unconstitutional

3     conduct.  *Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1249–50 (9th Cir. 2010).

4           At the hearing on the instant motion, plaintiff clarified he is relying on the first

5     "policy or custom" theory of municipal liability.  In relying on this theory, plaintiff ultimately

6     may establish municipal liability by demonstrating "the constitutional tort was the result of a

7     'longstanding practice or custom which constitutes the standard operating procedure of the local

8     government entity.'"  *Price v. Sery*, 513 F.3d 962, 966 (9th Cir. 2008) (quoting *Ulrich v. City &*

9     *Cnty. of S.F.*, 308 F.3d 968, 984–85 (9th Cir. 2002)).  To prevail, a plaintiff must show (1) that

10    the plaintiff "possessed a constitutional right of which [he or she] was deprived; (2) that the

11    municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's

12    constitutional right; and, (4) that the policy is the moving force behind the constitutional

13    violation."  *Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill*, 130 F.3d 432, 438 (9th Cir.

14    1997) (internal quotation marks omitted).

15          Here, the court finds plaintiff's allegations are insufficient to state a claim of

16    municipal liability under the policy or custom theory.  The only pertinent allegation in the

17    complaint demonstrates the conclusory nature of plaintiff's allegations:

18
19            Defendants acted pursuant to official policies of the CITY and
           CPFD in depriving Plaintiff of his free speech rights, since all
           individual defendants were responsible for creating, modifying, and
20            enforcing the policies under which they purported to act.

21    Compl. ¶ 79.

22          The court grants defendants' motion as to plaintiff's *Monell* claim.  However, the

23    court gives plaintiff leave to amend as requested, if he can do so consonant with Rule 11.

24        c.    <u>Garcia and Irish</u>

25          Defendants argue plaintiff does not allege sufficient facts showing Garcia and Irish

26    personally participated in the alleged constitutional violations.  ECF No. 7-1 at 18–20.  Plaintiff

27    counters his allegations are sufficient.  ECF No. 22 at 23.

28    /////

State officials sued in their personal capacities are persons for purposes of section 1983.  *See DeNieva v. Reyes*, 966 F.2d 480, 483 (9th Cir. 1992).  "Personal-capacity suits seek to impose personal liability upon a government official for actions [the official] takes under color of state law."  *Kentucky v. Graham*, 473 U.S. 159, 165 (1985).  Liability in a personal-capacity suit can be demonstrated by showing that the official caused the alleged constitutional injury.  *See id*. at 166 (noting "to establish *personal* liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right" (emphasis in original)).

Here, there are sufficient allegations to show personal participation by Garcia and Irish in deprivations of plaintiff's right to freedom of speech.  As to Garcia, plaintiff alleges that after he delivered the pornographic materials to the police, Garcia increased his harassment and retaliation, which chilled plaintiff's ability to exercise his free speech rights.  FAC ¶ 33.  Plaintiff alleges Irish issued his notice of termination and filed administrative charges against him to chill his expression of speech.  *Id*. ¶ 46.  Plaintiff's claims against Irish and Garcia in their personal capacities may proceed.

d.      Lollis

Defendants argue the claims against Lollis in his official capacity are redundant of those alleged against the City and thus should be dismissed.  ECF No. 7-1 at 20.  Plaintiff counters Lollis is sued in his official capacity, but the acts he engaged in were outside the scope of his duties; plaintiff says he has sufficiently pled individual liability.  ECF No. 22 at 23–24.

"Where both the public entity and a municipal officer are named in a lawsuit, a court may dismiss the individual named in his official capacity as a redundant defendant."  *Sanchez v. City of Fresno*, 914 F. Supp. 2d 1079, 1114 (E.D. Cal. 2012).  To the extent plaintiff brings a claim against Lollis in his official capacity, the court dismisses this claim as redundant because plaintiff also has named the City as a defendant.  However, Lollis is not entitled to dismissal from the lawsuit to the extent he is alleged to have acted in his individual capacity as well.  *Id.* at 1115.

/////

e.       Prima Facie Case

Defendants argue plaintiff does not state a prima facie section 1983 case because plaintiff (1) did not plead he spoke on a matter of public concern and (2) did not plead causation. ECF No. 7-1 at 20–24.  Plaintiff counters his allegations are sufficient to meet those elements. ECF No. 22 at 24–25.

It is rudimentary that public employees do not lose their First Amendment rights when going to work.  *See Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006).  Rather, the First Amendment shields public employees from employment retaliation for their protected speech activities.  *See Garcetti*, 547 U.S. at 417; *Connick v. Myers*, 461 U.S. 138, 140 (1983).  Out of recognition for "the State's interests as an employer in regulating the speech of its employees," *Connick*, 461 U.S. at 140, however, courts must "arrive at a balance between the interests of the [public employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees," *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968).  To strike this balance when ultimately evaluating a First Amendment retaliation claim, courts ask "a sequential five-step series of questions."  *Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009).

First, a court must consider whether the plaintiff has engaged in a protected speech activity, which requires the plaintiff to show he: "(1) spoke on a matter of public concern; and (2) spoke as a private citizen and not within the scope of [] official duties as a public employee." *Karl v. City of Mountlake Terrace*, 678 F.3d 1062, 1068 (9th Cir. 2012).  If the plaintiff makes these two showings, a court asks "whether the plaintiff has further shown that [he] (3) suffered an adverse employment action, for which the plaintiff's protected speech was a substantial or motivating factor."  *Id.*

If the plaintiff meets the burden on these first three steps, "thereby stating a prima facie claim of First Amendment retaliation, then the burden shifts to the government to escape liability by establishing either that: (4) the state's legitimate administrative interests outweigh the employee's First Amendment rights; or (5) the state would have taken the adverse employment action even absent the protected speech."  *Id.*

24

1    Here, defendants' motion relies only on the first, second, and third steps of the

2    analysis.

3                              1.  Public Concern

4    Whether an employee's speech addresses a matter of public concern is a pure

5    question of law that must be determined "by the content, form, and context of a given statement,

6    as revealed by the whole record." *Connick*, 461 U.S. at 147–48 & n.7.  Generally, the content of

7    the speech is the most important one.  *Clairmont*, 632 F.3d at 1103.  "[S]peech that deals with

8    individual personnel disputes and grievances and that would be of no relevance to the public's

9    evaluation of the performance of governmental agencies is generally not of public concern."

10   *Karl*, 678 F.3d at 1069 (internal quotation marks omitted, alteration in original).  "By contrast,

11   [s]peech involves a matter of public concern when it can fairly be considered to relate to any

12   matter of political, social, or other concern to the community."  *Id.* (internal quotation marks

13   omitted, alteration in original).  "Just as speech whose content exposes potential government

14   misconduct is speech on a matter of public concern, so too is speech made in the context of

15   litigation brought to expose such wrongful conduct."  *Id.*

16   Applying these principles to the allegations in the instant case, the court finds the

17   public concern requirement satisfactorily pled.  Plaintiff alleges that on March 7, 2012, when he

18   was cleaning his new work station, he found a printed e-mail with pornographic content.  FAC

19   ¶ 24.  The e-mail indicated it was from Blasdell.  *Id.*  When plaintiff turned in the e-mail to

20   Garcia, Garcia destroyed it.  *Id.* ¶¶ 24–25.  On March 29, 2012, plaintiff found four CDs

21   containing child pornography with Blasdell featured in images on the CDs.  *Id.* ¶ 27.  Because

22   plaintiff did not trust Garcia any longer, he decided to report the matter to the police department

23   instead.  *Id.*  Despite pressure from Garcia to give the materials to him, plaintiff delivered the

24   CDs to police Detective Green.  *Id.* ¶ 29.  Eventually, a nationwide crime ring was uncovered,

25   which included Blasdell: many individuals were arrested for making child pornography, and

26   several children, whose photos were depicted, were rescued.  *Id.* ¶ 31.  "The arrest and

27   prosecution of Blasdell made local, state and national news and thrust the City into nationwide

28   attention."  *Id.*  Plaintiff's report of Blasdell's misconduct self-evidently addresses a matter of

public concern.  *See id.* ¶ 77 (plaintiff's "speech affected numerous individuals, and the

community, and helped to ensure that the people responsible for creating and distributing child

pornography were brought to justice and removed from the community, helped to protect children

from sexual predators, and helped to require Blasdell and others to register as sex offenders in

order to help prevent subsequent offenses and to alert the public to the presence of sex offenders

in their neighborhoods.").

### 2. Speaker Status

Whether plaintiff's reporting was done in his capacity as a private citizen or in the

performance of his official job duties is a "mixed question of law and fact." *Karl*, 678 F.3d at

1071.  "The scope and content of a plaintiff's job responsibilities is a question of fact . . . ." *Id.*

At this stage of the litigation, plaintiff's allegation that he delivered the material to the police

department "as a citizen and not pursuant to official duties," FAC ¶ 29, is sufficient for purposes

of laying the foundation for attempting to prove a prima facie case.  *See id.*

### 3. Adverse Employment Action

"To establish that retaliation was a substantial or motivating factor behind an

adverse employment action, a plaintiff may introduce evidence that (1) the speech and adverse

action were proximate in time, such that a jury could infer that the action took place in retaliation

for the speech; (2) the employer expressed opposition to the speech, either to the speaker or to

others; or (3) the proffered explanations for the adverse action were false and pretextual." *Ellins*

*v. City of Sierra Madre*, 710 F.3d 1049, 1062 (9th Cir. 2013).  This step is "purely a question of

fact." *Eng*, 552 F.3d at 1071.  And "in evaluating whether the government's adverse employment

action was motivated by the employee's speech, [courts] must assume the truth of the plaintiff's

allegations." *Id.*

Here, plaintiff's allegations sufficiently plead that his speech was a substantial or

motivating factor in defendants' conduct.  Plaintiff alleges sufficient temporal proximity.

Plaintiff alleges he contacted the police in early April 2012.  FAC ¶¶ 27–32.  A month later, on

May 1, 2012, Garcia "ordered Lapere to inform Plaintiff that he was no longer to conduct

numerous routine duties[,]" such as fire prevention and inspections and business license

1    inspections. *Id.* ¶ 33(c). "In addition, on July 1, 2012, . . . Garcia told Lapere to inform Plaintiff

2    he could no longer conduct Code Enforcement or weed abatement duties." *Id.*  Furthermore,

3    Garcia prohibited plaintiff "from engaging in outside employment opportunities, . . . which had

4    been approved routinely . . . for many . . . years." *Id.* ¶ 33(d).  On February 12, 2013, Irish issued

5    plaintiff a notice of intended disciplinary action, and on March 4, 2013, Irish issued a notice of

6    termination. *Id.* ¶¶ 44–45.  Plaintiff alleges Lollis was aware of all these decisions.  (*Id.*)

7           Plaintiff also has alleged instances of opposition to his reporting activity.  When

8    plaintiff informed his co-workers he was planning to report the materials to the police, Garcia

9    "began to pressure Plaintiff, through coworkers, to turn the materials over to [him]." *Id.* ¶ 29.

10   Garcia became "very upset" when plaintiff did not turn over the materials. *Id.* ¶ 32.

11          At this stage of the litigation, the allegations are sufficient.  Assuming their truth,

12   as required, they show the speech and adverse action were proximate in time, providing a basis

13   for an inference that the action took place in retaliation for the speech after the employer

14   expressed opposition to the speech.  Defendants' motion is denied in this respect.

15          E.     Fifth and Sixth Clams: FMLA, 29 U.S.C. Sections 2615(a)(1) and (2)

16          Plaintiff alleges 1) defendants interfered with his FMLA rights by denying him his

17   rights to leave, FAC ¶¶ 87–88, and 2) retaliated against him for taking leave, *id.* ¶ 97.  Defendants

18   argue both claims should be dismissed because the claims are time-barred and plaintiff does not

19   plead a prima facie case.  Defs.' Mot. at 33.

20          a.     Statute of Limitations

21          A lawsuit alleging FMLA violations must be filed within two years after the last

22   action alleged to violate the FMLA.  29 U.S.C. § 2617(c) (1); 29 C.F.R. § 825.400(b).  The statute

23   of limitations is extended to three years for "willful" violations of FMLA rights.  29 U.S.C.

24   § 2617(c)(2); 29 C.F.R. § 825.400(b).  Plaintiff contends he alleged all of the relevant facts in his

25   original complaint filed on May 28, 2014, so the added FMLA legal theory is allowable; the

26   original complaint and the First Amended Complaint were filed within two years of the alleged

27   wrongdoing; and the statute of limitations runs not from the date of plaintiff's leave, as

28   defendants argue, but from the date of the interference or retaliation.  Plaintiff alleges the last

1   violation of FMLA concerning interference and retaliation occurred on March 4, 2013, when

2   plaintiff was terminated from his employment.  FAC ¶ 45.

3          Plaintiff argues he pleads the requisite "willful" allegation to support the three-

4   year statute of limitations.  But he does not need the three-year statute to avoid a time bar,

5   because he has adequately pled facts supporting this claim within the applicable two-year statute

6   of limitations in his May 28, 2014 complaint.  The motion to dismiss on these grounds is denied.

7          b.    Prima Facie Interference Claim

8          To make out an FMLA interference claim, an employee need only plead "(1) he

9   was eligible for the FMLA's protections, (2) his employer was covered by the FMLA, (3) he was

10   entitled to leave under the FMLA, (4) he provided sufficient notice of his intent to take leave, and

11   (5) his employer denied him FMLA benefits to which he was entitled." *Crawford v. JP Morgan*

12   *Chase NA*, 983 F. Supp. 2d 1264, 1270 (W.D. Wash. 2013) (internal citations omitted).

13   Defendant argues plaintiff was not entitled to FMLA leave because he did not suffer from a

14   "serious health condition," and was not an FMLA eligible employee because had not completed

15   1250 hours of services as required by 29 U.S.C. § 2611(2)(A).

16          As a threshold matter, plaintiff has pled that he suffered a sufficiently serious

17   health condition to afford him FMLA protection.  Plaintiff's on-duty injury, sustained fighting a

18   fire, caused illnesses, injuries and impairments including toxic smoke inhalation, bronchitis that

19   turned into pneumonia, as well as Valley Fever, hospitalization for pneumonia and a collapsed

20   lung, requiring follow-up surgery.  FAC ¶ 13.  He also has pleaded he was a full-time employee

21   throughout his fourteen years of employment, which satisfies the minimum hours required by

22   statute.  *Id.* ¶ 20.

23          As to the interference claim, plaintiff has pleaded that when he returned from his

24   FMLA leave, he was stripped of his job responsibility of obtaining bids from outside contractors

25   for the training facility he had been responsible for (*id.* ¶¶ 16, 18), he was denied the longstanding

26   right to adjust his work schedule, and was denied the ability to represent the fire department at

27   any meetings (*id.* ¶ 17); was stripped of numerous routine duties (*id.* ¶ 33.c), and was prohibited

28

1    from having a flexible schedule, which had been previously approved routinely, for years (*id.*

2    ¶ 33.e).  Plaintiff's complaints about these events to defendant City Manager Lollis were ignored

3    (*id.* ¶ 34).  Eventually plaintiff was terminated.  (*Id.* ¶¶ 44, 45).

4            Plaintiff sufficiently states a claim for interference with his FMLA rights by

5    stating he was reinstated in a position with substantially different duties and flexibility than his

6    original position.  He alleges facts supporting an inference the differences were motivated by his

7    taking leave. "[T]he statutory and regulatory language of FMLA makes clear that where an

8    employee is subjected to negative consequences . . . simply because he has used FMLA leave, the

9    employer has interfered with the employee's FMLA rights under 29 C.F.R. § 825.220(a)(1)." *Xin*

10   *Liu v. Amway Corp*., 347 F.3d 1125, 1136 (9th Cir. 2003); *see also Bonzani v. Shinseki,* No. CIV

11   S-11-0007 EFB, 2011 WL 4479758, at *7 (E.D. Cal. Sept. 26, 2011) (finding allegations that

12   FMLA leave was a "negative factor" in employment actions against plaintiff sufficient to state a

13   claim).  The motion to dismiss this claim is denied.

14            c.    Prima Facie Retaliation Claim

15           To plead a prima facie case of retaliation in violation of FMLA, a plaintiff must

16   allege facts to support that "(1) he availed himself of a protected right under the FMLA; (2) he

17   was adversely affected by an employment decision; [and] (3) there is a causal connection between

18   the employee's protected activity and the employer's adverse employment action." *Schultz v.*

19   *Wells Fargo Bank, Nat. Ass'n,* 970 F. Supp. 2d 1039, 1059 (D. Or. 2013).

20           Defendants argue plaintiff fails to plead sufficient facts showing the City's

21   decision to terminate plaintiff was causally related to his FMLA leave in March 2011, three years

22   prior.  Defs.' Mot. at 28–29.  Plaintiff responds he need only show temporal proximity when

23   comparing his return from leave and the retaliation beginning upon his return to show a causal

24   connection. Opp'n at 30-31.

25           Plaintiff's alleged facts sufficiently state a claim for FMLA retaliation given the

26   proximity between his return from leave and the change of duties and denial of previous schedule

27   privileges, actions taken well before plaintiff's discovery of the child pornography in Blasdell's

28   former office.  While plaintiff does not provide an exact date of the first instance of retaliation

1  upon his return, he says he noticed it "when" he returned, which signals it began at the time of his

2  return in April.  FAC ¶ 16.  This pleading is sufficient to articulate at this stage of the case a

3  prima facie case of retaliation under the FMLA.  *See Foraker v. Apollo Grp., Inc.*, 427 F. Supp.

4  2d 936, 943 (D. Ariz. 2006), *aff'd*, 302 F. App'x 591 (9th Cir. 2008) (collecting cases where

5  courts infer causation from a close temporal relationship between the leave and alleged adverse

6  actions; four days supports inference, six months does not).  The motion to dismiss this claim is

7  denied.

8  VII.    CONCLUSION

9              1.  Defendants' motion is granted with regard to:

10                   a.   The first claim against defendants Garcia and Irish in their individual

11                        capacities, without leave to amend;

12                   b.  The second claim with regard to harassment based on sex, without leave to

13                        amend;

14                   c.  The fourth § 1983 claim to the extent it is premised on municipal liability

15                        (*Monell* claim), with leave to amend; and

16                   d.  The fourth § 1983 claim against Lollis in his official capacity, without

17                        leave to amend.

18              2.  The motion is denied in all other respects.

19              3.  Plaintiff is directed to file an amended complaint consistent with this order

20                   within 21 days.

21              IT IS SO ORDERED.

22  DATED:  August 12, 2015.

23

24  _____

25  UNITED STATES DISTRICT JUDGE

26

27

28

30